IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

WILLIAM L. GROVES, et al.,

        Plaintiffs,

v.                              CIVIL ACTION NO.   2:08-cv-00820

ROY G. HILDRETH AND SON, INC., et al.,,

        Defendants.


**MEMORANDUM OPINION AND FINAL ORDER APPROVING SETTLEMENT AND
CERTIFYING THE SETTLEMENT CLASS**

      Pending before the court are the Joint Motion for Order Approving Final Settlement and For Entry of Final Judgment [Docket 48] and the Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses and Award to Class Representatives [Docket 51].

      This litigation arises from allegations that the defendants, Roy G. Hildreth and Son, Inc., Kimco, Megan Oil & Gas Company, Inc., Krakrow Corporation, GMH Gas Company, Inc., and Roy G. Hildreth (collectively, the "defendants"), entered into natural gas leases with the plaintiffs and failed to properly pay the royalties due under these leases.   The defendants and the named plaintiffs (collectively, the "Parties") have reached an agreement to resolve the claims of the named plaintiffs and the class they represent (collectively, "Settlement Class" or "Class Members").

      Having considered the entire record of submissions in this matter and the oral presentations at the final fairness hearing, I **FIND** that the Settlement Class satisfies the requirements of Federal Rules of Civil Procedures 23(a) and 23(b)(3).   Moreover, I **FIND** that

the settlement is fair, reasonable, and adequate.   Accordingly, the Joint Motion for Order Approving Final Settlement and For Entry of Final Judgment is **GRANTED**.  I further **FIND** that the attorney's fees, costs, expenses, and class representative awards are reasonable. Accordingly, the Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses and Award to Class Representatives is **GRANTED.**

## I.      Background

On May 8, 2008, the plaintiffs filed a Complaint in the Circuit Court of Roane County, West Virginia.   The Complaint asserts claims for breach of contract, breach of fiduciary duty, fraudulent concealment, and violations of West Virginia Code §§ 22-6-8 and 46A-6-101 *et seq.* The plaintiffs seek compensatory damages, punitive damages, restitution, costs, and attorney's fees.   On June 9, 2008, the defendants removed the action to this court pursuant to 28 U.S.C. § 1332, asserting that this court possessed subject-matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1332(d)(2) as well as the jurisdictional provisions of the Natural Gas Act, 15 U.S.C. § 717 *et seq.* (Not. Removal [Docket 1])   The plaintiffs moved to remand the action to the Circuit Court of Roane County, West Virginia, asserting that the defendants had failed to establish jurisdiction under either the class action requirements set forth in 28 U.S.C. § 1332(d)(2) or any other purported basis, including federal question jurisdiction under 28 U.S.C. § 1331 [Docket 11].   On August 12, 2008, this court denied the plaintiffs' request to remand the case, finding that the defendants had sufficiently alleged subject-matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") [Docket 14].

Immediately following this court's August 12, 2008 Order denying the plaintiffs' request to remand the case, the parties jointly requested that this court stay the case for ninety days "to

permit the parties to explore the opportunity to settle this action."   (Joint Mot. Stay [Docket 15]

¶ 1.)   I granted this Motion [Docket 16] and subsequently granted three later motions requesting

additional time to pursue settlement [Docket 18, 20, 24].   On November 23, 2010, I granted the

Parties' Joint Motion for Conditional Certification of a Temporary Settlement Class and

preliminarily approved the class action settlement, which set forth deadlines for notice to class

members, objections, exclusion requests, and the final approval of the settlement [Docket 28].

In response to the Parties' notification to Class Members, one objection was filed by a party who

opted out of the settlement.[1]   Eight exclusion requests were also filed.[2]   The Parties filed a joint

motion for final approval of class action settlement on April 28, 2011 [Docket 48].

On May 2, 2011, I held a formal fairness hearing.   At the hearing, the Parties requested a

final order and judgment exercising personal jurisdiction over the Class Members, certifying a

Settlement Class, finding that the settlement is fair, reasonable, adequate and not the product of

collusion, and granting final approval of the settlement pursuant to Federal Rule of Civil

Procedure 23(e).   The Parties were given an opportunity to speak in favor of the settlement.

The one class member who opted out of the settlement was also given an opportunity to raise his

concerns with the court.

## II.        Summary of the Final Settlement Agreement

----

[1] Although the party had opted out of the settlement and thus could not properly "object"
to the settlement, the court nevertheless allowed the individual with the opportunity to voice his
concerns during the Formal Fairness Hearing on May 2, 2011.

[2] Eight individual exclusion requests were filed, however, at the Formal Fairness
Hearing, counsel represented that these requests represent more than eight actual gas interests.

I hereby adopt the terms of the "Release and Settlement Agreement" [Docket 48-1], as the Final Settlement Agreement (the "Agreement").   The Agreement calculates settlement payments based upon each Class Member's "pro-rata share of the volumetric production of gas from the wells in which they had a royalty interest during the class period." (Release Settlement Agreement [Docket 48-1] ¶ 2.3.)   The distribution to each Class Member will be determined by allocating the total settlement fund to each Class Member's pro-rata share of the volumetric production.[3]   Each Class Member's payment will be reduced by attorneys' fees and costs and incentive awards to the class representatives.   Class Counsel has requested fees and costs in the amount of $33,000 and incentive awards to class representatives in an amount up to $7,500.

The Class Members will be paid out of a Settlement Fund established as a Qualified Settlement Fund within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and all rules and regulations thereunder.   The defendants will contribute a sum of $210,500 minus   "the amount attributable to any   members who elect to opt out of the settlement" to the Settlement Fund.   The Settlement Fund will be used to make settlement payments to participating Class Members and pay fee awards and to provide Class Counsel fees and awards to class representatives.  (Id. ¶ 2.3.)   During the formal fairness hearing, counsel represented that, in the event that class members cannot be located, any unpaid amounts attributable to their interests shall be paid into a *cy pres* account.   In addition, the defendants

---

[3] During the Formal Fairness Hearing, counsel informed the court that, in order to encourage class members to cash settlement checks, each of the settlement checks will be issued for at least ten dollars regardless of the class member's actual settlement as determined by his pro rata share of the settlement fund.  For example, a class member who is entitled to a settlement payment of less than one dollar will nevertheless receive a check for ten dollars to encourage that class member to cash the check and accept the settlement.

"shall bear the cost of class administration and class notice."  (Id. ¶ 2.7.)  Class Members will receive payment checks from the Claims Administrator automatically by virtue of failing to exclude themselves from the class.  During the Formal Fairness Hearing, counsel represented that the Claims Administrator anticipates mailing settlement checks within four weeks of final approval of the settlement.

One additional component of the Agreement pertains to the defendants' future payment of royalties.  Going forward, the defendants will "pay royalty for the volumes delivered to third party sales meters, at 85% of the TCO Appalachian Index, defined as the first of the month, Appalachian Index as published by Inside FERC." (Id. ¶ 2.5.) This change will only impact the lease holders of class members who did not opt out of this settlement; other leaseholders will continue to receive royalty payments as specified in their leases.

III.    **Personal Jurisdiction and Notice**

In the context of a class action, the due process requirements of the Fifth Amendment require "[r]easonable notice combined with an opportunity to be heard and withdraw from the class."  *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005).   Federal Rule of Civil Procedure 23 also requires that a class receive notice prior to settlement.  Rule 23(c) specifically provides that for a class maintained under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).   The rule further provides that the notice inform potential class members of the nature of the action, that class members may make an appearance through counsel, that class members may exclude themselves from the settlement, and that the class judgment will have a binding effect on class

members who are not excluded. *Id.* "'[S]ilence on the part of those receiving [such] notice is construed as tacit consent to the court's jurisdiction.'" *In re Serzone*, 231 F.R.D. at 231 (internal citation omitted).

The notice plan was implemented by Rust Consulting, which was selected by the Parties. The plan included a comprehensive mailing to all reasonably identifiable Class Members and the establishment of an informational website and toll-free telephone support number. Notice was uniquely effective in this action because the defendants' records of their leases allowed Rust Consulting to provide individual notice by mail to most Class Members. According to the declaration of Kahalla Thompson, a project manager with Rust Consulting, Rust caused 3,547 Notice Packages to be mailed to individual class members. (Thompson Decl. [Docket 50-1], at 3.) Of these 3,547 Notices, there were 416 undeliverable Notices as of March 1, 2011. (Id.) Rust was able to locate new addresses for 155 of these 416 undeliverable Notices, and Rust mailed these additional 155 Notices on March 4, 2011, leaving 261 Notices remaining as undeliverable. (Id.) The Parties report that as of April 29, 2011, the informational website had been accessed at least 2,383 times and, the toll-free telephone support number had received over 89 calls. (Id., at 2-3.)

Based on this information, I **FIND** that the notice provided was reasonable, adequate, and the best notice practicable under the circumstances and satisfied the requirement as set out in Federal Rule of Civil Procedure 23. Moreover, no notified Class Members have objected to the settlement on the basis of lack of reasonable notice and opportunity to be heard or to opt out. I **HOLD** that personal jurisdiction exists over the Class Members because notice was reasonable and afforded the Settlement Class an opportunity to be heard and to opt out.

## IV.    CAFA Requirements

The Class Action Fairness Act of 2005 ("CAFA") requires each defendant participating in a proposed class settlement to provide appropriate state officials with information about the settlement, including, *inter alia*, a copy of the complaint, notice of any judicial hearings, any notification to class members, and any final judgments on the settlement.  28 U.S.C. § 1715. The defendants sent notice packets to the appropriate State and Federal officials on June 21, 2011, and the Parties therefore requested the court to withhold entry of the Final Order approving the settlement until after the ninety (90) days expired as required for notice pursuant to 28 U.S.C. § 1715(d).    The Parties represented that neither State nor Federal Agencies' property will be affected by this class action settlement and that delaying entry of the Final Order for ninety (90) days would not adversely affect the time necessary to administer the claims. Because more than 90 days have passed since service was perfected and since there have been no adverse comments from any of the aforesaid State or Federal officials, the Court **FINDS** that compliance with CAFA is satisfactory.  *See Ault v. Walt Disney World Co.*, 2009 WL 3242028, at *1, n.4 (M.D. Fla. Oct. 6, 2009).

## V.    Class Certification

A settlement class must meet the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).  *In re Serzone*, 231 F.R.D. at 237.   The Fourth Circuit reads Rule 23 liberally and applies it flexibly to "'best serve the ends of justice for affected parties and promote judicial efficiencies.'"  *Id.* (quoting *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003)).

In this case, the Parties seek class certification under Rule 23(b)(3).  In my November 23, 2010 Order, I analyzed the proposed settlement pursuant to Rules 23(a) and 23(b)(3) and found that the requirements of those rules had been met.  Nothing added to the record since that time alters my findings.[4]  In addition, no Class Members have objected to the certification of a settlement class as preliminarily and conditionally certified in the November 23, 2010 Order. Finally, the high success rate of the class notification supports class treatment in this case because there is little risk that Class Members' interests were inadequately represented or were unprotected. Consequently, for the reasons set forth in the previous Order, and those discussed above, I **CERTIFY** the proposed class.

## VI.    Fairness Determination

Federal Rule of Civil Procedure 23(e)(2) provides that a court may only approve the binding settlement of a certified class action after determining that the proposed settlement is fair, reasonable, and adequate.  While compromise and settlement are favored by the law, "[t]he primary concern addressed by Rule 23(e) is the protection of class members whose rights may not have been given adequate consideration during settlement negotiations."  *In re Jiffy Lube*

---

[4]   According to the Parties' statements at the fairness hearing, accurately calculating the damages of each Class Member would require an individualized inquiry into factors affecting the specific royalty deductions of each Class Member.  But where common issues of liability predominate over individual issues of liability, courts find that the Rule 23(b)(3) predominance requirement is met even though an individualized inquiry into damages may be necessary.  *See Gunnells,* 348 F.3d at 428.  Particularly in this case, the fact that an accurate assessment of the Class Members' damages would require individualized inquiries detracts little from the predominating common liability issues.  Almost all of the Class Members have been notified and have tacitly agreed to a common calculation method for damages.  Consequently, there will be no actual individualized inquiry into damages that would destroy the "economies of time, effort, and expense," achieved by settling this action as a class.  Fed. R. Civ. P. 23 Advisory Committee's Note 1966, subdivision (b)(3).

*Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).   In *In re MicroStrategy, Inc. Securities Litigation*,

the court noted that "approval of a class action settlement is committed to 'the sound discretion

of the district courts to appraise the reasonableness of particular class-action settlements on a

case-by-case basis, in light of the relevant circumstances.'"   148 F. Supp. 2d 654, 663 (E.D. Va.

2001) (quoting *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986)).

    As a preliminary matter in this fairness determination, I note that the traditional concern

for the interests of absent class members is substantially ameliorated in this case by the high

percentage of known Class Members.   As discussed above, the Parties have successfully sent

individual notice to over 92 percent of the approximately 3,500 member class.   Therefore, the

majority of the Settlement Class has been directly informed of the terms of the settlement.   The

Class Members' tacit consent to the terms of the settlement weighs heavily towards a finding of

fairness.

    I must, however, apply the more specific analysis adopted by the Fourth Circuit for

determining whether the settlement satisfies the Rule 23 requirements.   The Fourth Circuit has

adopted a bifurcated analysis, separating the inquiry into a settlement's "fairness" from the

inquiry into a settlement's "adequacy."   *MicroStrategy*, 148 F. Supp. 2d at 663 (citing *In re Jiffy

Lube Sec. Litig*, 927 F.2d at 158-89); *see also Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F.

Supp. 499, 501 (E.D. Va. 1995).   In assessing the "fairness" of a proposed settlement, the court

must consider the following four factors:   "'(1) the posture of the case at the time the settlement

was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances

surrounding the negotiations, and (4) the experience of counsel in the area of class action

litigation.'"   *MicroStrategy*, 148 F. Supp. 2d at 663-64 (quoting *In re Jiffy Lube Sec. Litig.*, 927

F.3d at 159); *see also Strang*, 890 F. Supp. at 501. In determining the "adequacy" of the settlement, the court looks to the following:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*MicroStrategy*, 148 F. Supp. 2d at 665 (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.3d at 159); *see also Strang*, 890 F. Supp. at 501.

### A.     Fairness

I **FIND** that the Final Settlement Agreement in this action meets the fairness test because it has been negotiated at arm's length between counsel. This action has been pending for approximately three years. During that time, plaintiff Class Representatives have actively pursued necessary investigation and the parties have participated extensively in informal discovery. The defendants have produced numerous documents to the plaintiffs. During the pendency of this action, including a period of intensive settlement negotiations, Class Counsel has been able to determine the nature and strength of the Class Members' claims and to make reasonable damages calculations. Finally, Class Counsel are experienced in class action litigation generally and in the particular field of gas royalties class actions.

### B.     Adequacy

I **FIND** that the Agreement also meets the adequacy test. Although Plaintiff Class Representatives believe they have strong claims against the defendants, there is obviously no certainty that they will prevail if the settlement is not approved and the litigation continues. Moreover, the defendants deny liability and will continue to challenge Plaintiff Class

Representatives' claims if the case should move forward.   The issues in this action involving gas lease language and the permissibility of deductions from royalties are complex.   Complex litigation such as this would be very costly to maintain, as the Parties represent they expected to take many additional lengthy depositions and also engage in the continued production and review of documents.   Further, maintenance of this action, according to the Parties, would require extensive review by experts who would be costly to both sides.

There is no issue of the solvency of the defendants.   The Settlement Fund in this case is relatively small and the parties represent that the defendants have already deposited $50,000 to the Settlement Fund, as outlined in the Agreement.   No class members have filed objections to the Proposed Settlement and the lack of objections is especially significant because such a high percentage of the Class Members were successfully notified.[5]   Only twelve class members, out of approximately 3,547 potential class members, requested to be excluded from the settlement. For the reasons discussed above, I **FIND** that the settlement is fair, reasonable and adequate, and not the product of collusion.

**VII.    Joint Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses, and Award to Class Representatives**

By separate motion, the parties request that this court approve an award of $33,000.00 to plaintiffs' counsel and the payment of $7,500.00 in incentive awards to the class representatives.

---

[5]  The sole objection to the Proposed Settlement was raised by Thomas Newman, however, Mr. Newman requested to be excluded from the class.   While this court cannot consider Mr. Newman's objections because he is not a part of the class, Mr. Newman was nevertheless given the opportunity to speak during the formal fairness hearing.   Mr. Newman's concerns related to the adequacy of notice to class members, and as previously discussed I am satisfied that the notice provided in this case not only satisfied the requirement as set out in Federal Rule of Civil Procedure 23 but also was reasonable, adequate, and the best notice practicable under the circumstances.

[Docket 51].   The parties have represented that these sums are fair and reasonable and there has been no objection from any potential class members to the requested awards.

I have previously expressed my concerns with large fee awards in class action cases where the total amount of the settlement fund is very much a product of the number of plaintiffs rather than of the legal work performed because in cases of that nature, awarding such a large percentage of the fund inevitably results in a windfall for the plaintiffs' counsel.   In this case, however, almost all of the relatively small proposed class received actual notice of the terms of the settlement, including the attorneys' fee request, and failed to raise any objections to those terms, indicating that the class members have implicitly agreed to this request.   Moreover, the parties have represented that the "requested award is less than sixteen percent of the value provided the class."   (Mem. Supp. Pl.'s Mot. Award Attorneys' Fees [Docket 52], at 8.)   The implicit approval of the potential class members, the relatively low sixteen percent figure, as well as the extraordinary result achieved for the class members, all support my decision to approve the requested $33,000.00 attorneys' fee award.

The parties have further represented that $7,500 is a fair award for each of the two Class Representatives based on the substantial assistance that the Class Representatives provided. According to the parties, the Class Representatives provided and reviewed necessary documents, participated in mediation, and provided plaintiffs' counsel with assistance throughout the case. As stated above, a majority of the potential class members were provided with actual notice of these requested awards, which indicates to the court that potential class members implicitly approved of these awards.   Accordingly, the court hereby **GRANTS** the Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Costs and Expenses and Award to Class

Representatives [Docket 51].   The court **AWARDS** plaintiffs' counsel $33,000.00 in fees and further **AWARDS** $7,500.00 to each of the two Class Representatives.

## VIII.   Conclusion

For the reasons discussed above, the Joint Motion for Final Approval of Class Action Settlement is **GRANTED** [Docket 48].   Accordingly, the court **CERTIFIES** the proposed class upon finding that the class satisfies Rule 23(a) and Rule 23(b)(3) and **APPROVES** the Final Settlement Agreement upon finding that the settlement is fair, reasonable, and adequate for the purposes of Rule 23(e).

The Court further **FINDS** that there have been certain putative Class Members who have timely opted out of the class [Docket 34, 35, 38, 39, 40, 41, 43, 44, 45], and, therefore, they are not bound by the Agreement and may bring their own suits.   The statute of limitations is tolled for these opt outs up to and including thirty (30) days after entry of this Memorandum Opinion and Final Order Approving Settlement and Certifying the Settlement Class.

ENTER:      September 20, 2011

Joseph R. Goodwin, Chief Judge